# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIA DEL ROSARIO HERNANDEZ, <br><br> Plaintiff, <br><br> v. <br><br> MICROBILT CORPORATION, <br><br> Defendant. | No. 3:21-cv-04238-FLW-LHG <br><br> MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S SECOND MOTION TO COMPEL ARBITRATION AND TO DISMISS <br><br> Motion Date: August 15, 2022 |

**FRANCIS MAILMAN SOUMILAS, P.C.**
James A. Francis
John Soumilas
Lauren KW Brennan
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel. (215) 735-8600
Fax. (215) 950-8000
Email: jfrancis@consumerlawfirm.com
Email: jsoumilas@consumerlawfirm.com
Email: lbrennan@consumerlawfirm.com

*Attorneys for Plaintiff and the Class*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................... ii

I.      INTRODUCTION .........................................................................................1

II.     BACKGROUND ...........................................................................................2

        A.      Facts and Nature of the Claim.............................................................2

        B.      Terms & Conditions and Agreement to Arbitrate................................4

        C.      Procedural History Before This Court .................................................5

        D.      Proceedings in Arbitration ..................................................................7

III.    ARGUMENT................................................................................................10

        A.      The Arbitration Clause Is Unconscionable And Unenforceable.........10

                1.      The Arbitration Agreement Here Is a Procedurally
                        Unconscionable Contract of Adhesion .....................................11

                2.      The Arbitration Agreement Here Is Substantively
                        Unconscionable Because It Limits Plaintiff's Available
                        Remedies ...................................................................................13

        B.      AAA Properly Refused To Administer An Arbitration In This
                Matter .................................................................................................15

        C.      This Court Should Not Rewrite Defendant's Arbitration
                Provision, Which By Its Own Terms Mandates That This Case
                Proceed In Court.................................................................................21

IV.     CONCLUSION...........................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>CASES</u>

*Alexander v. Anthony Intern., L.P.*,
  341 F.3d 256 (3d Cir. 2003) ...................................................................... 11, 13-14

*Asch Webhosting, Inc. v. Adelphia Bus. Sols. Inv., LLC*,
  2007 WL 2122044 (D.N.J. July 23, 2007) ........................................................10

*Assisted Living Assocs. of Moorestown, L.L.P. v. Moorestown Tp.*,
  31 F. Supp. 2d 389 (D.N.J. 1998).......................................................................22

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)............................................................................................14

*Ciccio v. SmileDirectClub, LLC*,
  2 F. 4th 577 (6th Cir. 2021) ................................................................17, 18, 19

*Cortez v. Trans Union, LLC*,
  617 F.3d 688 (3d Cir. 2010) .................................................................................4

*Delta Funding Corp. v. Harris*,
  189 N.J. 28 (2006) ..............................................................................................14

*Dockser v. Schwartzberg*,
  433 F.3d 421 (4th Cir. 2006) ..............................................................................19

*In re G-I Holdings, Inc.*,
  755 F.3d 195 (3d Cir. 2014) ...............................................................................22

*Granite Rock Co. v. Int'l Bd. of Teamsters*,
  561 U.S. 287 (2010)............................................................................................10

*Great Western Mortg. Corp. v. Peacock*,
  110 F.3d 222 (3d Cir. 1997) .........................................................................16, 17

*Heisman v. Wyndham Vacation Resorts, Inc.*,
  2021 WL 1138125 (D.N.J. Mar. 22, 2021) ........................................................16

*Hubbard v. Comcast Corp.*,
  2020 WL 4188127 (D.N.J. July 21, 2020) .........................................................13

*Isko v. Engelhard Corp.*,
    367 F. Supp. 2d 702 (D.N.J. 2005) ..................................................... 22

*Litman v. Cellco P'ship*,
    655 F.3d 225 (3d. Cir. 2011) ............................................................... 14

*Maity v. Tata Consultancy Servs., Ltd.*,
    2021 WL 6135939 (D.N.J. Dec. 29, 2021) ......................................... 11

*Morales v. Sun Constructors, Inc.*,
    541 F.3d 218 (3d Cir.2008) ................................................................. 15

*Morgan v. Sundance, Inc.*,
    ___ U.S. ___, 142 S. Ct. 1708 (2022) ............................................ 1, 23

*Nino v. Jewelry Exch., Inc.*,
    609 F.3d 191 (3d Cir. 2010) ................................................................ 14

*Parilla v. IAP Worldwide Servs., VI, Inc.*,
    368 F.3d 269 (3d. Cir. 2004) ......................................................... 14, 21

*Pennbar Corp. v. Ins. Co. of N. Am.*,
    976 F.2d 145 (3d. Cir. 1992) ............................................................... 23

*Quilloin v. Tenet HealthSystem Philadelphia, Inc.*,
    673 F.3d 221 (3d Cir. 2012) ................................................................ 15

*Rodriguez v. Raymours Furniture Co.*,
    138 A.3d 528 (N.J. 2016) .................................................................... 11

*Rudbart v. N. Jersey Dist. Water Supply Comm'n*,
    605 A.2d 681 (1992) ............................................................................ 12

*Trans Union, LLC v. Ramirez*,
    141 S.Ct. 2190 (2021) ........................................................................... 3

*VICI Racing, LLC v. T-Mobile USA, Inc.*,
    763 F.3d 273 (3d Cir. 2014) ................................................................ 22

*VICI Racing, LLC v. T-Mobile USA, Inc.*,
    921 F. Supp. 2d 317 (D. Del. 2013) ............................................... 22-23

## S<small>TATUTES</small>

Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ........................................*passim*

15 U.S.C. § 1681n ............................................................................5, 6

15 U.S.C. § 1681o ............................................................................5, 6

Plaintiff Maria Del Rosario Hernandez ("Plaintiff") respectfully submits this opposition to the Second Motion to Compel Arbitration and to Dismiss filed by MicroBilt Corporation ("Defendant" or "MicroBilt").

## I.      <u>INTRODUCTION</u>

As the Supreme Court has recently and unanimously held, courts "must hold a party to its arbitration contract just as the court would to any other kind." *Morgan v. Sundance, Inc.*, ___ U.S. ___, 142 S. Ct. 1708, 1713 (2022).  Through the present motion, Defendant urges this Court to do what it would not do with any other contract: namely, rewrite the terms of an agreement Defendant drafted, to achieve Defendant's preferred result.   Defendant's contract of adhesion, which it requires consumers to sign before they can proceed with a credit application, contains an arbitration provision which explicitly incorporates the rules of the American Arbitration Association ("AAA").   Pursuant to AAA rules AAA reviewed Defendant's arbitration agreement declined to administer Plaintiff's claim because Defendant's agreement has a material departure from AAA rules and due process protections.   Defendant pretends surprise at the result, but the same AAA rules Defendant chose to incorporate in its agreement also specifically state that this administrative review by the AAA is a required prerequisite to AAA administration. Pursuant to those same rules, Plaintiff may now proceed in court.

Plaintiff should furthermore be permitted to proceed in court for the independent reason that Defendant's arbitration provision is both procedurally and substantively unconscionable and thus invalid under applicable law.  It is unquestionably a contract of adhesion, which Plaintiff was unable to negotiate and had no choice but to accept (by clicking "Next" without ever seeing the text of the agreement itself) in order to proceed with getting a payday loan.  It is also substantively unconscionable for the very reason AAA identified in its refusal to administer the dispute: it prohibits the recovery of remedies available under federal law, punitive damages, consequential damages, and attorneys' fees and costs.

Because the process and rules Defendant unilaterally chose have resulted in an outcome it does not like, Defendant now asks this court to ignore those rules. Despite being given multiple opportunities to amend the arbitration provision to comply with the rules is selected, Defendant declined to do so.  Defendant must now live with the result dictated by the agreement itself: a return of proceedings to court. Defendant's motion should be denied.

## II.   <u>BACKGROUND</u>

### A.   **Facts and Nature of the Claim**

In November 2020, Plaintiff applied for a loan through Oasis1 Marketing, an online lender offering installment loans of $100-$1,000.  ECF 1, Compl. at ¶ 27; https://www.oasis1marketing.net/Default.aspx. **REDACTED**

2

REDACTED

REDACTED                                               ECF 36-1, Declaration of

Walter Wojciechowski ("Wojciechowski Decl.") at ¶¶ 8-9.

The only document Plaintiff walked away with was an email stating that her

request was denied because MicroBilt's "Instant Bank Verification process that you

completed has come back with a flag that you are on the Federal Government OFAC

Watch List."  ECF 1 at ¶ 36.[1] She eventually learned that the report contained an

OFAC record for an individual with the same common first and last name, but with

years of birth in 1971 and 1958 – far different from Plaintiff's year of birth of 1989.

*Id.* at ¶¶ 32-33.

OFAC records are among the most harmful types of information that can be

communicated to a prospective creditor, because they indicate that the individual is

a terrorist, drug trafficker, or other criminal who is legally ineligible to do business

in the United States.  ECF 1 at ¶¶ 6-10.  Numerous courts, including the U.S. Court

---

[1]  REDACTED                                       (ECF 36-1, Wojciechowski
Decl. at ¶ 14), but that question is not before the Court at this juncture, and at best
Defendant's proposed evidence creates an issue of fact to resolved by a jury. And
regardless of any credit denial, the U.S. Supreme Court has found that simply
disseminating a "possible" OFAC match about a consumer to a third party causes
reputational harm similar to defamation, and upheld the imposition of statutory and
punitive damages under the FCRA even when no credit denial on the basis of the
OFAC record is proved.  *Trans Union, LLC v. Ramirez*, 141 S.Ct. 2190, 2209-11
(2021).

of Appeals for the Third Circuit, have found that selling OFAC records to creditors using only a name, and disregarding available dates of birth, is "reprehensible" and a willful violation of applicable law. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 707-08, 723 (3d Cir. 2010); ECF 1 at ¶¶ 11-14.[2]

**B.   Terms & Conditions and Agreement to Arbitrate**

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED
REDACTED
REDACTED

---

[2]      Defendant's argument that the report it prepared and disseminated about Plaintiff is purportedly not a consumer report governed by the FCRA is not before this Court in the present motion, and in any event is foreclosed entirely by binding Third Circuit precedent holding that OFAC records provided to prospective creditors are regulated by the FCRA, regardless of any attempt to disclaim FCRA coverage through private contractual arrangements. *Cortez*, 617 F.3d at 707-08.

REDACTED
REDACTED
REDACTED
REDACTED

REDACTED

REDACTED

REDACTED 15 U.S.C.

§§ 1681n and o (in the case of a successful action, any person who fails to comply

with any FCRA provision "is liable" for attorney's fees and costs of the action.").

REDACTED

 REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

**C.    Procedural History Before This Court**

Plaintiff filed her Complaint on March 5, 2021, asserting that MicroBilt's use

of name-only matching logic to sell OFAC records to prospective creditors is a willful

violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. ECF 1.

Plaintiff sought the full remedies available under the FCRA, including actual

damages, statutory damages of $100 to $1,000, punitive damages, and reasonable attorneys' fees and costs.  ECF 1 at pp. 8-9; 15 U.S.C. §§ 1681n, 1681o.

Defendant sought an extension of time to answer or otherwise respond to the Complaint, and the Parties subsequently engaged in detailed discussions regarding Plaintiff's claim, including MicroBilt's assertion that an arbitration agreement applies, among other bases for dismissal.  *See* ECF 23 at pp. 3-5; ECF 23-1 at ¶ 5. These discussions continued both before and after July 26, 2021, when Defendant filed its Motion to Dismiss and Compel Arbitration (the "First Motion to Compel Arbitration," ECF 12).  *See* ECF 23 at pp. 4-5, ECF 23-1 at ¶¶ 12-19 (detailing proceedings following First Motion to Compel Arbitration).  Ultimately, Plaintiff elected to proceed in arbitration, and voluntarily dismissed this action on September 21, 2021.  ECF 17.  She filed her claim with AAA three days later, on September 24, 2021.  Ex. 1.[3]

Even before responding to Plaintiff's claim in arbitration, MicroBilt filed a Motion for Attorneys' Fees and Costs on October 20, 2021, claiming that, notwithstanding multiple requests for extensions made with the consent of both parties, *Plaintiff* unnecessarily duplicated proceedings.  ECF 20.  As detailed her

---

[3]     Citations to Exhibits ("Ex. __") refer to those exhibits attached to the concurrently-filed a Declaration of James A. Francis in Support of Plaintiff's Opposition to Defendant's Second Motion to Compel Arbitration and Dismiss.

response, Plaintiff acted in good faith at all times and sought to avoid wasting judicial and party resources.  ECF 23.  The Motion for Attorneys' Fees and Costs has been terminated in light of subsequent proceedings.  ECF 33.

## D.   Proceedings in Arbitration

Following Plaintiff's September 24, 2021 filing of her claim in arbitration, AAA reviewed the Agreement to determine whether it complied with its "Consumer Due Process Protocol" and "Consumer Arbitration Rules."  Under the Consumer Arbitration Rules (which the Agreement explicitly states will govern any arbitration in this matter), AAA states that it:

> will accept cases after the AAA reviews the parties' arbitration agreement and if the AAA determines the agreement substantially and materially complies with the due process standards of these Rules and the *Consumer Due Process Protocol*. **Should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.**

Ex. 2, R-1(d) at p. 10 (emphasis added).

These Consumer Arbitration Rules specify that where an arbitration agreement provides for AAA rules, the parties "shall be deemed to have agreed that the application of the AAA's rules and AAA administration of the consumer arbitration shall be an essential term of their consumer agreement." *Id.* at R-1(a), p. 9.  These rules reserve the right to decline to administer an arbitration for multiple reasons, including noncompliance with its Consumer Due Process Protocol.  *Id.* at R-1(d), R-54, R-55.

AAA reviewed Defendant's arbitration Agreement, and on October 28, 2021, sent a letter to the Parties indicating that the Agreement drafted by Defendant "has a material or substantive deviation" from AAA's Consumer Due Process Protocol and/or Consumer Arbitration Rules.  ECF 36-6.  AAA indicated that it would decline to administer the dispute unless Defendant agreed to waive these provisions.  *Id.*

Defendant did not substantively respond, but instead demanded to know "(1) who specifically conducted the review of the arbitration agreement; and (2) who is requesting that these provisions be waived."  Ex. 3.  AAA responded on November 22, 2021, reiterating that the determination was made "by the AAA" as part of its standard review of arbitration agreements pursuant to AAA rules.  ECF 36-7.  AAA also withdrew its request that Defendant waive the forum selection clause, but continued to request that Defendant waive the limitation on recovery.  *Id.* Specifically, these rules require that a AAA arbitrator is "authorized to award any damages that could be available in court[.]"  *Id.*

On December 8, 2021, AAA notified the parties that it was declining to administer the arbitration of Plaintiff's claim.  Ex. 4.  In light of its failure to conform its arbitration Agreement to AAA rules, AAA requested that Defendant remove reference to AAA rules from its agreement.  *Id.*

Following a subsequent communication by Defendant, AAA later reopened its file, and the parties conducted a conference call on December 17, 2021.  ECF 36-

8

9.  Both during the call, and in a January 14, 2022 letter memorializing the same, AAA affirmed that the limitation on damages contained in Defendant's arbitration Agreement was a material or substantial deviation from AAA's Consumer Due Process Protocol, and that "the AAA will not administer consumer disputes where the arbitration agreement does not substantially and materially comply with the *Protocol*." *Id.* AAA further reiterated that pursuant to AAA Rules, "if AAA declines to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution." *Id.*

On February 11, 2022, AAA again confirmed that it was declining to administer Plaintiff's claim, stating that "we have not received respondent's waiver of the provision of the party's arbitration agreement that violates the Consumer Due Process Protocol; accordingly, we have closed our file on this matter."  ECF 36-10.

Even in the face of AAA's clear statement that the claim could not be arbitrated under Defendant's Agreement according to AAA rules, Defendant requested that the parties proceed before an alternate arbitrator with the agreement as drafted.  Ex. 5.  Plaintiff responded that, in light of the language of the Agreement requiring compliance with AAA rules, and AAA's position that the Agreement does not comply, the only option was a return to court proceedings.  Ex. 6.  Defendant nonetheless apparently moved forward with engaging an alternate arbitrator, and

repeated the same request a month later.  Ex. 7.[4]  Plaintiff again stated her position

that, given AAA's determination regarding the Agreement, the case should return to

court.  Ex. 8.

Because this matter remained administratively open before the Court, Plaintiff

requested a status conference seeking the Court's procedural guidance.  ECF 28.

The present motion followed.

## III.   ARGUMENT

### A.    The Arbitration Clause Is Unconscionable And Unenforceable

The existence of an enforceable arbitration agreement between the parties is

a threshold issue to be decided by the Court.  *Granite Rock Co. v. Int'l Bd. of

Teamsters*, 561 U.S. 287, 297 (2010).   Whether an arbitration provision is

unconscionable is and thus unenforceable is a question of law to be determined by

the court, and not an arbitrator.  *Asch Webhosting, Inc. v. Adelphia Bus. Sols. Inv.,

LLC*, No. CIV. A. 04-2593-MLC, 2007 WL 2122044, at *3 (D.N.J. July 23, 2007)

("Unconscionability is a question of law for the Court to decide.") (*citing* N.J.S.A.

§ 12A:2–302) *aff'd*, 362 F. App'x 310 (3d Cir. 2010).  "Under New Jersey law, the

---

[4]      Defendant's efforts to proceed before an alternate arbitrator is contrary to
AAA rules and potentially a breach of the Agreement itself, since AAA rules provide
that where, as here, the rules are incorporated into an arbitration agreement, the
parties will be deemed to have agreed that "*AAA administration* of the consumer
arbitration shall be an *essential term* of their consumer agreement."  Ex. 2, at R-1(a)
(emphasis added).

unconscionability determination requires evaluation of both procedure and substance." *Rodriguez v. Raymours Furniture Co.*, 138 A.3d 528, 541 (N.J. 2016). Procedural unconscionability "arises out of defects in the process by which the contract was formed," whereas substantive unconscionability "simply suggests the exchange of obligations so one-sided as to shock the court's conscience." *Maity v. Tata Consultancy Servs., Ltd*., No. 19CV19861KSHCLW, 2021 WL 6135939, at *5 (D.N.J. Dec. 29, 2021).

    1.    The Arbitration Agreement Here Is a Procedurally Unconscionable Contract of Adhesion

Courts regularly find that procedural unconscionability is present where the contract at issue is a "contract of adhesion," which is one "prepared by the party with excessive bargaining power who presents it to the other party for signature on a take-it-or-leave-it basis." *Alexander v. Anthony Intern., L.P.*, 341 F.3d 256, 265 (3d Cir. 2003). When a contract of adhesion is involved, courts look to four additional factors: "'(1) the subject matter of the contract, (2) the parties' relative bargaining positions, (3) the degree of economic compulsion motivating the 'adhering' party, and (4) the public interests affected by the contract.'" *Maity*, 2021 WL 6135939, at *5 (quoting *Uddin v. Sears, Roebuck & Co*., 2014 WL 1310292, at *7 (D.N.J. Mar. 31, 2014)).

There can be no serious question that Defendant's "Terms & Conditions" is a contract of adhesion, REDACTED

11

REDACTED

REDACTED                                    REDACTED

REDACTED

REDACTED                                  *Rudbart v. N. Jersey Dist. Water*

*Supply Comm'n*, 605 A.2d 681, 686 (1992) (contract is "unquestionably" of adhesion

where it was "presented to the public on standardized printed forms, on a take-it-or-

leave-it basis without opportunity for purchasers to negotiate any of the terms.").

Furthermore, each of the additional factors support a finding of procedural

unconscionability here.   First, the contract addresses a consumer transaction, as

opposed to one between business entities.  *See, e.g.*, *Rudbart*, 605 A.2d at 686-87

(discussing procedural unconscionability in consumer contracts).  Second, there can

be no question MicroBilt had superior bargaining power with respect to the Terms

& Conditions; indeed, Plaintiff had none whatsoever – her choice was to assent and

have the chance to receive the loan she sought, or be prevented from applying in the

first place.  Third, at least some degree of economic compulsion was present given

that Plaintiff was seeking a small-dollar installment or "payday" loan, a form of

credit marketed toward financially vulnerable consumers who are typically unable

to access traditional lending.  *See* PEW CHARITABLE TRUSTS, PAYDAY LENDING IN

AMERICA: WHO BORROWS, WHERE THEY BORROW, AND WHY 2-3 (2012)[5];

LAKITQUANA LEAL, THE UNBANKED AND PAYDAY LON CONSUMERS (2018) (noting

that payday loans "are frequently used by the most financially vulnerable

populations"). [6]  *See, e.g.*, *Hubbard v. Comcast Corp.*, No. CV1816090RBKKMW,

2020 WL 4188127, at *7 (D.N.J. July 21, 2020) (finding that consumer faced with

take-it-or-leave-it employment contract "made a strong showing of procedural

unconscionability").  Finally, as discussed in further detail below, the imposition of

Defendant's arbitration clause here frustrates public interest by prohibiting the

recovery of remedies provided for under the FCRA.

Therefore, sufficient indicia of procedural unconscionability are present,

combined with the clear substantive unconscionability, to find the arbitration clause

invalid.

2.   The Arbitration Agreement Here Is Substantively Unconscionable
     Because It Limits Plaintiff's Available Remedies

It is well-settled under both New Jersey law and federal precedent that an

arbitration agreement is substantively unconscionable and therefore unenforceable

where it prohibits recovery of relief available under applicable law.  *Alexander*, 341

---

[5]     *Available at*
https://www.pewtrusts.org/~/media/legacy/uploadedfiles/pcs_assets/2012/pewpayd
aylendingreportpdf.pdf;

[6]     *Available at*
https://www.aeaweb.org/conference/2019/preliminary/paper/7HneFQsi

F.3d at 267-68; *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 278-79 (3d. Cir. 2004) (arbitration agreement requiring parties to bear their own attorneys' fees and costs even for claims under fee-shifting federal statute was unconscionable); *Delta Funding Corp. v. Harris*, 189 N.J. 28, 44 (2006) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). A party's attempt to disallow mandatory fee shifting, consequential damages, or punitive damages improperly limits mandatory statutory remedies such that the agreement to arbitrate is unconscionable and unenforceable. *Delta Funding Corp.*, 189 N.J. at 115; *see also Nino v. Jewelry Exch., Inc.,* 609 F.3d 191, 203 (3d Cir. 2010) (arbitration provisions requiring parties to bear their own attorneys' fees and costs "undermine the legislative intent behind fee-shifting statutes" and are thus unconscionable).

Contrary to Defendant's suggestion, the principle that limitation on remedies is a hallmark of substantive unconscionability remains strong, even after *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) and *Litman v. Cellco P'ship*, 655 F.3d 225, 230 (3d. Cir. 2011). Indeed, since those decisions the Third Circuit has reiterated that "[p]rovisions requiring parties to be responsible for their own expenses, including attorneys' fees, are generally unconscionable because restrictions on attorneys' fees conflict with federal statutes providing fee-shifting as a remedy." *Quilloin v. Tenet HealthSystem Philadelphia, Inc*., 673 F.3d 221, 230-31 (3d Cir. 2012).

14

Defendant's arbitration agreement is substantively unconscionable because it includes exactly such provisions, seeking to entirely prohibit the recovery of remedies available under the FCRA, and sought in Plaintiff's Complaint: punitive damages, consequential damages, and attorneys' fees and costs. Thus, the arbitration provision is both procedurally and substantively unconscionable, and thus invalid.

## B.    AAA Properly Refused To Administer An Arbitration In This Matter

Even if this Court finds that the arbitration agreement is valid and enforceable, it should deny Defendant's motion because the AAA rules that Defendant chose to adopt in the Agreement specifically contemplate the procedure followed here:  an administrative review of arbitration clauses for substantial compliance with AAA due process standards *before* a claim is submitted to an arbitrator. It was Defendant's choice to incorporate AAA rules into its Terms & Conditions, and it cannot now complain that AAA applied them as written.[7]

AAA's Consumer Arbitration Rules plainly state that AAA will only "accept cases *after the AAA reviews the parties' arbitration agreement* and **if** the AAA determines the agreement substantially and materially complies with the due process

---

[7]    *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 222 (3d Cir.2008) ("[E]very contracting party has the duty to learn and know the contents of the contract before he [or she] signs and delivers it.")

15

standards of these Rules and the Consumer Due Process Protocol." Ex. 2 at p. 10 (emphasis added).[8]

After conducting this review, AAA recognized the same substantive unconscionability described above, and found that Defendant's arbitration agreement did not comply with AAA's Consumer Due Process Protocol, which requires that a AAA arbitrator is "authorized to award any damages that could be available in court [.]" *Id.* Thus, within the discretion reserved to AAA by the rules (which, again, Defendant chose to incorporate into the Agreement), AAA declined to administer the dispute. *See, e.g.*, Ex. 2, at R-53, R-55. Courts routinely permit plaintiffs to proceed in court after AAA declines to administer an arbitration pursuant to its rules. *Heisman v. Wyndham Vacation Resorts, Inc.*, 2021 WL 1138125 (D.N.J. Mar. 22, 2021).

Defendant relies on *Great Western Mortg. Corp. v. Peacock*, 110 F.3d 222 (3d Cir. 1997) to argue that an arbitrator, and not a AAA administrator, should evaluate the limitation on remedies in the Agreement. ECF 36-1 at pp. 21-22. But *Great Western* addressed whether the plaintiff had *waived* her right to certain

---

[8] Furthermore, Defendant's continued insistence that the text of its arbitration Agreement be filed under seal is puzzling given that AAA rules also require that any arbitration agreement incorporating AAA rules be part of a *publicly-accessible* registry of arbitration clauses. Ex. 2, AAA Consumer Arbitration Rules at R-12, p. 16.

available remedies, not whether the presence of limitations on remedies rendered the agreement unconscionable and invalid – indeed, the *Great Western* court confirmed that a valid agreement to arbitrate existed. 110 F.3d at 229-30, 232. And as detailed above, courts in New Jersey and the Third Circuit have repeatedly found since *Great Western* that procedural and substantive unconscionability are issues for the court to decide.  And more fundamentally, the AAA determination Defendant disputes is not in fact about the validity of the agreement, but about AAA's interpretation of its own rules.  AAA rules explicitly reserve to AAA interpretation of all provisions of the rules except those related to the powers of the arbitrator.  Ex. 2, AAA Consumer Arbitration Rules at R-13.  AAA's determination does not deal with the power of the arbitrator, but rather with interpretation of the terms of AAA's Consumer Due Process Protocol and with AAA's willingness to administer the dispute in the first place.

Defendant next asserts that *Ciccio v. SmileDirectClub, LLC*, 2 F. 4th 577 (6th Cir. 2021) supports its position here, but that case involved a dispute regarding the arbitrability of a claim, and not, as here, AAA's determination that the text of an arbitration agreement does not comply with AAA rules.  In *Ciccio*, AAA determined following administrative review that its Healthcare Due Process Protocol and Healthcare Policy Statement applied to the claim.  *Id.* at 580.  These specialized AAA rules required either a court order or execution of post-dispute agreement in

17

for a dispute to be arbitrable.  *Id.*  The defendant disputed that those healthcare-specific rules applied, and asserted that the claim was arbitrable without following the procedures set forth in the specialized rules.  *Id.*[9]

By contrast here, there is no dispute that AAA's Consumer Due Process Protocol and Consumer Arbitration Rules apply to Plaintiff's claim. And more fundamentally, the dispute in this case is not whether the claim is arbitrable – *e.g.,* whether the parties agreed to arbitrate or whether the claim falls within the scope of the Agreement.  Rather, the question is whether AAA is willing to administer the dispute. AAA, within its discretion as contemplated by AAA rules, declined to do so because it found that the limitation of remedies "violates the Consumer Due Process Protocol[.]" ECF 36-10. And as the *Ciccio* court recognized, a different result is required where the dispute is not a gateway arbitrability question.  2 F. 4th at 583.[10]  It furthermore confirmed that "AAA may choose for *itself* which claims it

---

[9]  A truly comparable dispute in this case would be if Defendant had disputed AAA's determination that the Consumer Arbitration Rules and Consumer Due Process Protocol applied to Plaintiff's claim.  If Defendant had made such an assertion, AAA rules provide for the appointment of an arbitrator to resolve the dispute.  Ex. 2 at R-1(e).  Defendant has not made this assertion, and does not do so now.

[10]  Both the *Ciccio* court and Defendant selectively quote AAA rules regarding submission of "any disputes" to the arbitrator.  2 F.4th at 584; ECF 36-11 at p. 24. But the text of the rule states that "**AAA has the discretion** to apply or not to apply the *Consumer Arbitration Rules*, and **the parties** are able to bring any disputes **concerning the application or non-application of the Rules** to the attention of the arbitrator."  Ex. 2 at p. 6 (emphases added).  But this is not a dispute concerning the

18

CASE

will arbitrate" and contrasted its decision to another court which "simply defer[red] to the AAA administrator's interpretation of their own rules" where the question did not address arbitrability – "what the Agreement itself means." *Id.* at 585, 587 (contrasting its decision to *Dockser v. Schwartzberg*, 433 F.3d 421 (4th Cir. 2006)). Because the issue here is not what Defendant's Agreement *means*, but whether AAA is willing to administer a dispute under the Agreement, by its own terms *Ciccio* does not support Defendant's position.

As discussed in section II.A.2 above, Defendant is incorrect that limitations on available remedies, including punitive and consequential damages, and the mandatory fee-shifting provided for under the FCRA, are enforceable under New Jersey law and within the Third Circuit.  Indeed, Defendant fails to cite a single case from New Jersey or within the Third Circuit supporting such a proposition.  ECF 36-11 at pp. 26-27.  And to reiterate, the AAA determination Defendant seeks to challenge was not regarding legal validity of the Agreement, but rather AAA's decision within its discretion to accept or decline an arbitration pursuant to the rules Defendant knowingly incorporated into its Agreement.

---

"application or non-application" of the Consumer Arbitration Rules – everyone agrees that the Consumer Rules apply.  And the dispute at issue is not between "the parties" – but rather between AAA and Defendant concerning AAA's willingness to administer Plaintiff's claim.

Defendant's assertion that the Agreement allows Plaintiff's claim to be heard by any arbitrator is incorrect – AAA rules state that administration *by AAA* is an essential term of any arbitration agreement that incorporates AAA rules.  Ex. 2, at R-1(a) (emphasis added).  This is on top of the foundational issue identified by AAA – the Agreement itself violates AAA rules which require that the arbitrator be able to award any remedy available in court, in this case attorneys' fees and costs and consequential and punitive damages.

Defendant asserts that AAA's published commentary on Principle 14 of the Consumer Due Process Protocol supports its position, but as with its other citation to AAA rules, Defendant manufactures that appearance through selective quotation. In reality, the relevant Reporter's Comment makes clear that AAA has the opposite purpose: "The intent is to make clear that arbitrators deriving their authority from Consumer contracts should enjoy the same authority courts have to fashion relief, *including awarding attorney's fees and punitive damages*." Ex. 9, at p. 30 (emphasis added).  As discussed in section III.B.2 above, the limitation on remedies renders the arbitration agreement substantively unconscionable and unenforceable in court, and in any event AAA was within its discretion to decline to administer the dispute for noncompliance with its longstanding review process.

Defendant got exactly what it bargained for here: submission of Plaintiff's claim to AAA, and according to the AAA rules Defendant chose to incorporate into

the Agreement, AAA (1) conducted an administrative review for substantive compliance with its rules, and (2) declined based on this review to administer disputes under the Agreement, pursuant to the discretion reserved under the rules. Defendant cannot now be heard to complain simply because the rules it selected led to an outcome it does not like.

## C.    This Court Should Not Rewrite Defendant's Arbitration Provision, Which By Its Own Terms Mandates That This Case Proceed In Court

In a last-ditch effort to avoid facing liability in court for its patently illegal practices with respect to the sale of grossly inaccurate OFAC records, Defendant asserts that the unconscionable portions of its arbitration provision are purportedly severable, and that arbitration can proceed. ECF 36-11 at p. 30-32. But severance of *parts* of the arbitration provision is contrary to the text of the Agreement, REDACTED

REDACTED

REDACTED

REDACTED                        ECF 36-5 at p. 6. As the Third Circuit has found, the presence of a contract provision regarding severance is highly relevant to determine whether severance is appropriate. *Parilla*, 368 F.3d at 288. Here, the Agreement states with specificity the parties' intended result if the arbitration provision is found invalid, and this Court should uphold that stated intent, and permit this case to proceed in court.

21

Defendant points instead to the "miscellaneous" provision of the Terms & Conditions in support of *replacement* of the arbitration provision rather that severance.  ECF 36-11 at p. 30-32.  But this general provision cannot overrule the specific language of the arbitration provision which contemplates that it rises or falls as a whole, and that a return to federal or state court is appropriate if it falls.  ECF 36-5 at p. 6; *Isko v. Engelhard Corp.*, 367 F. Supp. 2d 702, 710 (D.N.J. 2005) ("An axiom of language construction is that specific provisions control general terms or clauses.") (citing New Jersey law); *Assisted Living Assocs. of Moorestown, L.L.P. v. Moorestown Tp.*, 31 F. Supp. 2d 389, 399 (D.N.J. 1998) ("In New Jersey, it is a well-settled principle of contract interpretation that, in construing the contract as a whole, specific terms or clauses control general terms or clauses"); *accord In re G-I Holdings, Inc.*, 755 F.3d 195, 205 (3d Cir. 2014) (construing Delaware law and holding that "[s]pecific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one.").

Defendant's citation to *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273 (3d Cir. 2014) is unavailing, because the contract at issue contained only the "replacement" language, and not the more specific terms describing the remedy if the exact provision at issue (there an ambiguous term) is found unenforceable, unlike the Agreement here.  *VICI Racing, LLC v. T-Mobile USA, Inc.*, 921 F. Supp. 2d 317,

328 (D. Del. 2013) (three-line provision ambiguous).   Because the arbitration provision specifically contemplates severance as a whole, it controls over the general "miscellaneous" provision.

Defendant asserts that the "liberal policy favoring arbitration" commands the result it prefers, but the U.S. Supreme Court has recently made clear that this "liberal policy" simply means that arbitration agreements are placed on the same footing as other contracts. *Morgan v. Sundance, Inc.*, __ U.S. ___, 142 S.Ct. 1708, 1714 (2022) (quoting *Flood & Conklin Mfg. Co*, 388 U.S. 395, 404 n.12 (1967)).   Just as courts interpret other contracts against the drafter, and decline to rewrite their terms when a party does not like the result, this Court should apply traditional contract principles and decline to the alter the terms of the Agreement and find that jurisdiction is solely proper in this Court.   *See, e.g.*, *Pennbar Corp. v. Ins. Co. of N. Am.*, 976 F.2d 145, 151 (3d. Cir. 1992) (describing principles of contract interpretation, including that courts may not remake or rewrite contracts "the parties themselves saw fit to enter into.").

MicroBilt drafted the Agreement to incorporate AAA rules, and to provide that the case should return to court if the arbitration provision is unenforceable.   It has steadfastly refused to depart from the text of the Agreement up until now. Defendant must live with the result commanded by the Agreement it drafted and the rules it selected, and face Plaintiff's claim in court.

## IV.   <u>CONCLUSION</u>

For all the reasons set forth herein, Plaintiff respectfully asserts that Defendant's Second Motion to Compel Arbitration and to Dismiss should be denied. A ruling otherwise would result in a manifest injustice to the Plaintiff.

DATED:   July 18, 2022       <u>*s/ James A. Francis*</u>

**FRANCIS MAILMAN SOUMILAS, P.C.**
James A. Francis
John Soumilas
Lauren KW Brennan
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel. (215) 735-8600
Fax. (215) 950-8000
Email: jfrancis@consumerlawfirm.com
Email: jsoumilas@consumerlawfirm.com
Email: lbrennan@consumerlawfirm.com

*Attorneys for Plaintiff and the Class*

24

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 18, 2022, he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ James A. Francis*
James A. Francis
