**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY
(609) 989-2182

| | |
|---|---|
| CHAMBERS OF<br>FREDA L. WOLFSON<br>CHIEF JUDGE | Clarkson S. Fisher Federal<br>Building & U.S. Courthouse<br>402 East State Street<br>Trenton, New Jersey 08608 |

**LETTER ORDER**

October 25, 2022

Angelo A. Stio, III, Esq.
Pepper Hamilton LLP
301 Carnegie Center, Suite 400
Princeton, NJ 08543

James A. Francis, Esq.
Francis Mailman Soumilas, P.C.
1600 Market Street, Suite 2150
Philadelphia, PA 19103

     **RE:** *Hernandez v. MicroBilt Corp.*,
        **Civ. Action No. 21-04238 (FLW) (LHG)**

Counsel:

  Plaintiff Maria Del Rosario Hernandez ("Plaintiff") brings this putative class action against Defendant MicroBilt Corporation ("Defendant"), alleging Defendant violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") by improperly identifying her as an individual on a sanctions list published by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"). Presently before this Court is Defendant's Second Motion to Compel Arbitration and Dismiss Plaintiff's Complaint, arguing that Plaintiff's claims must proceed through arbitration in accordance with an arbitration provision in the parties' service agreement.

  For the reasons set forth below, Defendant's motion to compel arbitration is **DENIED**.

**I. BACKGROUND**

  **A. Facts**

For the purposes of the instant motion, the Court will only recount the relevant facts.

  On November 9, 2020, Plaintiff applied for a loan through an online lender, Oasis1 Marketing ("Lender"). ECF No. 1 ("Compl.") ¶ 27. In connection with Plaintiff's loan application,

1

the Lender requested a consumer report on Plaintiff using Defendant's Instant Bank Verification ("IBV") process. *Id.* ¶ 28.[1] On the same day, Defendant furnished the requested consumer report to the Lender, ECF No. 36, Decl. of Angelo A. Stio, III ("Stio Decl."), Ex. A, which, Plaintiff asserts, inaccurately reported that Plaintiff's name matched a name listed on OFAC's sanctions list, Compl. ¶¶ 29-35.[2] As a result of the inaccuracies contained in Plaintiff's consumer report, Plaintiff alleges that Lender denied her loan application because "the Instant Bank Verification process that [she] completed has come back with a flag that [she was] on the Federal Government OFAC Watch List." *Id.* ¶ 36. In addition, Plaintiff also alleges she suffered reputation harm and emotional distress. *Id.* ¶ 37.

For individuals to use Defendant's IBV services and access its website, Defendant asserts that they must first consent and agree to "Terms & Conditions" set forth in Defendant's standardized service agreement. Wojciechowski Decl. ¶ 5; Stio Decl., Ex. C ("Agrmt.").

Defendant asserts that, when Plaintiff utilized its IBV services and accessed its website on November 9, 2020, in connection with her loan application, Plaintiff had voluntarily assented to the arbitration provision included within the Terms & Conditions ("Arbitration Agreement"). Wojciechowski Decl. ¶¶ 6, 13. The Arbitration Agreement requires "any dispute or claim arising out of or relating in any way to your use of this Website and the products and services available hereunder, must be resolved exclusively by *binding arbitration*." Agrmt. at 5 (emphasis added). The Arbitration Agreement specifies that the arbitration "will be conducted before a single arbitrator *in accordance with the rules of the American Arbitration Association ('AAA')*." *Id.* (emphasis added).

The Arbitration Agreement also contains a damage limitation provision limiting the arbitrator's ability to award attorneys' fees and punitive and consequential damages:

> Each party is responsible for its own attorneys' fees without regard to which party is deemed the prevailing party in the arbitration proceeding. Except for punitive and consequential damages (which the arbitrator is not authorized to award), and subject to the terms and conditions of this Agreement, the arbitrator is authorized to award either party any money damages or any provisional or equitable remedy permitted by applicable law.

*Id.*

---

[1] According to Defendant, IBV is an automated information verification service used to verify an individual's identity and banking information. ECF No. 36, Decl. of Walter Wojciechowski ("Wojciechowski Decl.") ¶ 3-4.

[2] OFAC administers and enforces economic and trade sanctions based on U.S. foreign policy and national security goals against threats to the national security, foreign policy or economy of the United States. DEP'T OF THE TREASURY, https://home.treasury.gov/policy-issues/office-of-foreign-assets-control-sanctions-programs-and-information (last visited Oct. 24, 2022); *see also* Compl. ¶ 6. As part of these efforts, OFAC maintains and publishes the Specially Designated Nationals and Blocked Persons List ("OFAC List"), which is a list of individuals and entities owned or controlled by, or acting for or on behalf of, targeted countries. It also lists individuals, groups, and entities, such as terrorists and narcotics traffickers designated under programs that are not country specific. DEP'T OF THE TREASURY, https://home.treasury.gov/policy-issues/financial-sanctions/specially-designated-nationals-and-blocked-persons-list-sdn-human-readable-lists (last visited Oct. 24, 2022); *see also* Compl. ¶ 7. Generally, individuals and businesses in the United States are prohibited from conducting any business with anyone listed on the OFAC List. DEP'T OF THE TREASURY, https://home.treasury.gov/policy-issues/financial-sanctions/specially-designated-nationals-and-blocked-persons-list-sdn-human-readable-lists (last visited Oct. 24, 2022); *see also* Compl. ¶ 8.

Further, the Arbitration Agreement includes a severability clause, which states that "[i]f this arbitration provision is held to be invalid or otherwise unenforceable for any reason, it will be severed from this Agreement and the parties agree that exclusive jurisdiction and venue for any claims will be in the state or federal courts in New Jersey." *Id.*

Finally, the Arbitration Agreement also provides that "[t]his Agreement shall be governed by and construed in accordance with the sole and exclusive law, jurisdiction and venue of the State of New Jersey". *Id.* at 6.

### B. Procedural History

On March 5, 2021, Plaintiff filed a putative class action complaint, asserting one count pursuant to the FCRA against Defendant for failing to follow reasonable procedures to assure the maximum possible accuracy of information contained in the consumer reports it prepares. ECF No. 1. On July 26, 2011, pursuant to the Arbitration Agreement, Defendant filed a Motion to Compel Arbitration and to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 9 U.S.C. § 4. ECF No. 11. On September 21, 2021, Plaintiff voluntarily dismissed the Complaint, ECF No. 17, and submitted her claim for arbitration to the AAA on September 24, 2021, ECF No. 41, Decl. of James A. Francis ("Francis Decl."), Ex. 1.

On October 28, 2021, the AAA sent a letter to the parties stating that it had "determined that [the] arbitration arises out of a consumer agreement and, as such, the Consumer Arbitration Rules [] apply". Stio Decl., Ex. D. For cases proceeding under the AAA's Consumer Arbitration Rules ("Consumer Rules"), the AAA stated it reviews arbitration agreements to determine "material compliance with the due process standards of the Consumer Due Process Protocol [] and the Consumer Rules." *Id.* The AAA noted that its review is "administrative", "not an opinion on whether the arbitration agreement [] is legally enforceable, nor is it a determination regarding the arbitrability of the dispute." *Id.* In addition, before moving forward with the arbitration proceeding, the AAA asked Defendant to waive certain provisions in the Arbitration Agreement, because these provisions constituted "a material or substantial deviation from the Consumer Rules and/or Protocol." *Id.*[3] The AAA informed Defendant that "[a]bsent receipt of the requested waiver, the AAA will decline to administer this dispute and possibly any future consumer arbitrations involving this business". *Id.* Finally, the letter noted that "pursuant to the R-1(d) of the Consumer Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution." *Id.*

On November 22, 2021, the AAA sent a second letter amending its findings in its October 28 letter, noting that the damage limitation provision violated Principle 14 of the AAA's Consumer Due Process Protocol ("Protocol"). Stio Decl., Ex. E. The letter further requested that Defendant

---

[3] In its October 28 letter, the AAA challenged the damage limitation provision (but not the attorney's fees portion within it) and the forum selection provision. Stio Decl., Ex. D. In a letter dated November 22, 2021, the AAA later changed its position to challenge only the damage limitation provision and requested Defendant waive the entire provision, including the portion with respect to attorney's fees. Stio Decl., Ex. E.

3

waive this provision such that "the arbitrator will be authorized to award any damages that could be available in court, as required by the Protocol." *Id.*

On December 8, 2021, the AAA wrote a third letter to the parties informing them that because the AAA had "not received the required waivers and fees from [Defendant]", the AAA "must decline to administer [the] case" and had closed its file. Francis Decl., Ex. 4. The AAA also stated that it "may decline to administer future consumer arbitrations involving MicroBilt" and requested that Defendant "remove the AAA name from its consumer arbitration clause so that there is no confusion to the public regarding [its] decision." *Id.*

On January 14, 2022, the AAA sent a letter memorializing a telephonic conference between the AAA and the parties on December 17, 2021. Stio Decl., Ex. G. In it, the AAA reiterated its position that the AAA will not administer consumer disputes where the arbitration agreement does not substantially and materially comply with the Protocol and again requested Defendant to waive its damage limitation provision. *Id.*

On February 11, 2022, the AAA sent a letter notifying the parties that it had terminated the arbitration, because the AAA had "not received [Defendant's] waiver of the provision of the party's arbitration agreement that violates the Consumer Due Process Protocol". ECF No. 28, Ex. B.[4]

On April 25, 2022, the Court held a telephonic conference with the parties and the Magistrate Judge directed the parties to submit a joint letter briefing the issues regarding the arbitrability of this matter. ECF No. 32. On May 9, 2022, the parties submitted a joint letter setting forth their positions and the relief they each seek from the Court. ECF No. 34. Defendant argues that the AAA's determination that the Arbitration Agreement violated the Protocol was based upon a faulty process that does not permit Plaintiff to litigate in this court. *Id.* Plaintiff opposes arbitration given the AAA's declination to administer an arbitration proceeding and, in accordance with the AAA's rules Plaintiff argues that she is permitted to proceed here. The instant motion ensued. *Id.*

## II. <u>LEGAL STANDARD</u>

The Federal Arbitration Act ("FAA") establishes "a strong federal policy in favor of resolving disputes through arbitration." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 219 (3d Cir. 2014) (quoting *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009)). Congress passed the FAA specifically "to 'reverse the longstanding judicial hostility to arbitration agreements ..., and to place arbitration agreements upon the same footing as other contracts.'" *Teamsters Local 177 v. United Parcel Serv.*, 966 F.3d 245, 251 (3d Cir. 2020) (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002)).

---

[4] On several occasions prior to the AAA's termination of the arbitration, Defendant wrote to the AAA contesting the AAA's position that the arbitration agreement violated the AAA's rules and requesting that the AAA appoint an arbitrator to make the determination instead. *See, e.g.*, Stio Decl., Ex. F.

In achieving this end, the FAA provides that contract provisions containing arbitration clauses shall be binding, "allows for the stay of federal court proceedings in any matter referable to arbitration, and permits both federal and state courts to compel arbitration if one party has failed to comply with an agreement to arbitrate." *Beery v. Quest Diagnostics, Inc.*, 953 F. Supp. 2d 531, 537 (D.N.J. 2013) (citing 9 U.S.C. §§ 2-4). Collectively, "those provisions [of the FAA] 'manifest a liberal federal policy favoring arbitration agreements.'" *Id.* (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). In that vein, "'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

New Jersey state law accords with the federal preference for arbitration. The Supreme Court of New Jersey has explained that "the affirmative policy of [New Jersey], both legislative and judicial, favors arbitration as a mechanism of resolving disputes." *Martindale v. Sandvik, Inc.*, 173 N.J. 76, 92 (2002) (citations omitted); *see also Curtis v. Cellco P'ship*, 413 N.J. Super. 26, 34 (App. Div. 2010) (citations omitted) ("New Jersey courts favor arbitration as a means of resolving disputes, embracing the federal policy preferring this method of alternative dispute resolution.").

While federal and state law presumptively favor the enforcement of arbitration agreements, when a district court is presented with a motion to compel arbitration, it typically answers the following two questions before compelling arbitration pursuant to the FAA: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of that arbitration agreement. *Century Indem.*, 584 F.3d at 523 (citations omitted).

### III. DISCUSSION

Defendant brings the present motion under § 4 of the FAA, which provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate ... may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Defendant principally argues that Plaintiff's refusal to proceed with arbitration following the AAA's declination to administer the arbitration was in violation of the Arbitration Agreement. ECF No. 36, Def. Br. at 2, 25. Defendant further argues that the AAA's decision not to arbitrate the claim was incorrect, based on a "plain misreading" of the AAA's rules, and was improperly determined by "an AAA staff member (not an arbitrator)". *Id.* As such, the AAA's administrative decision was infirm and non-binding and thus, does not affect the requirement to arbitrate set forth in the Arbitration Agreement. *Id.* at 1-2.

On the other hand, Plaintiff takes the position that the Arbitration Agreement incorporated the AAA's rules and that, in accordance with those rules, the AAA declined to administer the arbitration and permitted Plaintiff to pursue her claims in this Court. ECF No. 41, Pl. Opp. Br. at 15.

Based on the following reasons, the Court finds no basis under the FAA to compel arbitration. Under the terms of § 4 of the FAA, Plaintiff has not failed, neglected to, or otherwise refused to arbitrate. *See* 9 U.S.C. § 4. To the contrary, Plaintiff has followed the rules of the AAA,

which were incorporated under the Arbitration Agreement, and those rules allow her to resume litigation here.

### C. Arbitration Agreement

Under the FAA, the Court's discretion is limited to compelling arbitration only in accordance with the terms of the parties' agreement. *See* 9 U.S.C. §§ 3, 4; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The Supreme Court has held that "the central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quoting *Volt Info. Scis., Inc. v. Board of Tr.*, 489 U.S. 468, 479 (1989)). Thus, "parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate," "so too may they specify by contract the rules under which that arbitration will be conducted." *Volt Info Scis.*, 489 U.S. at 479 (citations omitted).

In considering the present motion, this Court first refers to the terms underlying the Arbitration Agreement. As an initial matter, I am satisfied that there was a valid agreement to arbitrate. Neither party contest that, prior to the AAA's termination of the arbitration on February 11, 2022, the parties had agreed to arbitrate their dispute in accordance with the terms set forth in their agreement.[5] In addition, neither party disputes that Plaintiff's claim falls within the scope of the Arbitration Agreement.

The Arbitration Agreement sets forth the rules that apply to arbitration between Plaintiff and Defendant. Specifically, it states that the arbitration will be conducted "in accordance with the rules of the [AAA]". Agrmt. at 5. The AAA determined that its Consumer Rules and its Protocol apply to the parties' dispute. Stilo Decl., Ex. D. Neither party disputes that these rules are fully incorporated by the Arbitration Agreement nor that both parties are bound by them. *See* Def. Br. at 24; Pl. Opp. Br. at 18.

By agreeing to arbitrate under the AAA's rules, the parties consented to the Consumer Rules and the process for administering arbitrations. Under Consumer Rule 1(a), parties agree "that the application of the AAA's rules and [the] AAA administration of the consumer arbitration shall be an essential term of their consumer agreement." Francis Decl., Ex. 2 ("Consumer Rules") at 10. Under Consumer Rule 1(b), when parties agree to arbitrate under the Consumer Rules, they "thereby authorize the AAA to administer the arbitration". *Id.* at 11. Specifically, it allows for the "authority and duties of the AAA" to be "carried out through such of the AAA's representatives as it may direct" and that the AAA has discretion to "assign the administration of an arbitration to any of its offices". *Id.* Consumer Rule 13 states that when parties agree to arbitrate under AAA's rules, "the parties also agree that AAA will administer the arbitration" and that the "AAA will have the final decision on…which AAA staff members will administer the case". *Id.* at 18. And

---

[5] While Plaintiff now contests, for the first time, the enforceability of the Arbitration Agreement in her briefing, she does not dispute that she "elected to proceed in arbitration" by voluntarily initiating arbitration with the AAA, Pl. Opp. Br. at 6, and that she attempted to abide by the Arbitration Agreement "to the extent possible" until the AAA declined to administer the arbitration, ECF No. 34 at 3. Defendant asserts in its brief that "there is no serious dispute that Plaintiff entered into a valid and binding arbitration agreement" and that Plaintiff opened the arbitration with the AAA based on the validity of the agreement to arbitrate. Def. Br. at 14, 16. In any event, I need not consider the validity of the Arbitration Agreement, because this matter shall proceed in this Court. *See infra*.

finally, Consumer Rule 1(d) sets forth the administrative process by which AAA accepts or rejects cases for arbitration and provides parties with the option to pursue their dispute in court should the AAA decline to administer an arbitration. *Id.* at 11.[6]

In compliance with the AAA's rules and the parties' Arbitration Agreement, Plaintiff, here, sought to arbitrate her claim by voluntarily dismissing her Complaint and filing an arbitration claim with the AAA. ECF No. 17; Francis Decl., Ex. 1. The arbitration, however, was terminated by the AAA because of the damage limitation provision in the parties' agreement, drafted by Defendant. *See* ECF No. 28, Ex. B. Indeed, the AAA expressed to Defendant on several occasions that it would decline to arbitrate the dispute unless Defendant agreed to waive the provision in violation of the AAA's rules. *See* Stilo Decl., Exs. D, E, G; ECF No. 28, Ex. B. Defendant objected to the AAA's administrative determination and refused to waive the at-issue provision. Besides arguing that the AAA's determination was infirm, Defendant offers no explanation as to why it is not obligated to follow AAA's rules and procedures. "Nothing in the arbitration agreement—or the caselaw—gives Defendant the right to refuse to arbitrate merely because it disagreed with how its chosen arbitration agency decided to proceed." *Eliasieh v. Legally Mine*, LLC, No. 18-03622, 2020 WL 1929244, at *3 (N.D. Cal. Apr. 21, 2020). Therefore, because Defendant underwent the AAA's process for administering arbitration and was denied arbitration, it exhausted its arbitration avenue, as provided by the parties' agreement. Thus, it cannot seek to compel arbitration again.

Moreover, the AAA's rules authorize Plaintiff to pursue her claims in court under these very circumstances. Because the AAA declined to arbitrate Plaintiff's claims and because the parties' arbitration agreement fully incorporated AAA's rules, Plaintiff had a contractual right to submit her claims before the Court pursuant to Consumer Rule 1(d) ("should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution"). Defendant chose to incorporate the AAA's rules into its form agreement and as such, it should have understood its consequences. Consumer Rules at 11.

Other federal courts have similarly refused to compel arbitration in circumstances where the AAA declined to administer an arbitration based on the failure of a party to comply with the AAA's policies and procedures. In *Heisman v. Wyndham Vacation Resorts, Inc.*, the AAA declined to arbitrate due to preexisting failures by defendant to follow the AAA's rules. No. 20-11480, 2021 WL 1138125, at *1 (D.N.J. Mar. 22, 2021). The court in that case held that there was no failure, neglect, or refusal on the plaintiffs' part to arbitrate given that the plaintiffs complied with the rules of arbitration as provided in the parties' agreement. *Id.* at *3. And, as in this case, the *Heisman* court further held that under Consumer Rule 1(d), the dispute rightfully was back in court. *See id.* at *1 n. 2, *3.[7] The Ninth Circuit in *Lifescan, Inc. v. Premier Diabetic Services., Inc.*

---

[6] In full, Consumer Rule 1(d) states: "The AAA administers consumer disputes that meet the due process standards contained in the *Consumer Due Process Protocol* and the *Consumer Arbitration Rules*. The AAA will accept cases after the AAA reviews the parties' arbitration agreement and if the AAA determines the agreement substantially and materially complies with the due process standards of these Rules and the *Consumer Due Process Protocol*. Should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution." Rule 1(d). Consumer Rules at 11.

[7] Several other cases also refused to compel arbitration under circumstances with substantially similar facts as the current case. In *Eliasieh*, the AAA terminated arbitration after the defendant failed to pay fees and to waive two provisions in its agreement in violation of the AAA's rules. 2020 WL 1929244, at *1-2. The court found that the defendant materially breached the arbitration agreement by choosing not to follow the AAA's process, leading to the

considered whether there was "failure, neglect, or refusal of another to arbitrate" under § 4 of the FAA based on a party's failure to pay arbitrators' fees. 363 F.3d 1010, 1013 (9th Cir. 2004). The Ninth Circuit found no basis for an order compelling arbitration since the AAA's rules, as incorporated in the parties' agreement, allowed the arbitrator to condition arbitration on prepayment of fees. *Id.* at 1012-13.[8] In another case relating to refusal to pay fees, the Ninth Circuit held that a company's refusal to participate in a properly initiated arbitration proceeding was a breach of the arbitration agreement and precluded that company from later enforcing the arbitration agreement". *See Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005).

Thus, under the AAA's rules and well-settled caselaw, the declination of arbitration by the AAA due to Defendant's conduct relieves Plaintiff from arbitration and there is no basis for this Court to compel arbitration.[9]

D.   **Threshold Issues of Arbitrability**

Defendant also argues that threshold issues of arbitrability, such as the enforceability of arbitration provisions, have been delegated to an arbitrator. As such, these issues must be considered by an arbitrator, rather than by this Court or an AAA staff member. Def. Br. at 20.

However, there are no threshold issues of arbitrability in dispute in the present motion.[10] Plaintiff, when she voluntarily submitted her claim to the AAA for arbitration, implicitly conceded that her claim was arbitrable and that the Arbitration Agreement was valid. And in the present motion, Defendant's dispute does not center on the enforceability or validity of the parties' agreement, Def. Br. at 14, but instead, it centers on the AAA's determination that the damage limitation provision violated its own rules. Def. Br. at 20 ("the AAA staff member's determination that the provisions violate the AAA's Consumer Due Process Protocol was incorrect, because it is contrary to the Protocol").[11] For instance, Defendant argues that the AAA administrative staff

---

termination of the arbitration proceedings. *Id.* at *3. In *Adame v. Ally Fin., Inc.*, the AAA declined to administer the parties' arbitration due to past non-compliance by the defendant with the AAA's rules. No. 2-17-01654, 2017 WL 82118291, at *1 (C.D. Cal. Aug. 23, 2017). Like this case, the arbitration agreement there was governed by the AAA's rules. *Id.* While the defendant cured its noncompliance with the AAA shortly after the AAA's declination, the court refused to compel arbitration and held that under Consumer Rule 1(d), the plaintiff had the right to litigate the dispute. *Id.* at *2.

[8] *See also, Pre-Paid Legal Servs., Inc. v. Cahil*, 786 F.3d 1287, 1294 (10th Cir. 2015) (concluding that the defendant breached the arbitration agreement by failing to pay his fees in accordance with the AAA's rules and causing the AAA to terminate the arbitration); *Roach v. BM Motoring, LLC*, 228 N.J. 163, 181 (2017) (holding that a party's failure to advance required fees that results in the dismissal of an arbitration claim amounts to a material breach of the arbitration agreement and relieves the non-breaching party of its obligations).

[9] The Court notes that, even if there was a basis for compelling arbitration, the AAA may very well decline to arbitrate this dispute again if Defendant continues to refuse to waive the at-issue provisions of its Arbitration Agreement.

[10] As I explained *supra*, the arbitration here took place in accordance with the terms in the parties' agreement and has come to this Court under those same terms.

[11] Defendant cites to a Third Circuit opinion in *Great Western Mortgage Corp. v. Peacock*, 110 F.3d 222 (3d Cir. 1997) in support of its argument that the validity and enforceability of the damage limitation provision in the Arbitration Agreement should be determined by an arbitrator. Def. Br. at 20-22. However, that case is easily distinguishable from the current dispute because here, Defendant is not disputing the validity and enforceability of the Arbitration Agreement. In *Great Western*, the plaintiff raised several arguments as to why her arbitration agreement was invalid and unenforceable. For example, the plaintiff argued that a provision in her arbitration agreement limiting

8

inappropriately made a substantive legal decision that should have been reserved for the arbitrator. Def. Br. at 30. However, Defendant, having consented to the Arbitration Agreement, agreed to be bound by the processes as set forth under the AAA's rules. Pursuant to Consumer Rule 1(b), the AAA has discretion to "assign the administration of an arbitration to any of its offices". Consumer Rules at 11. Further, as both Defendant and the AAA have noted, the AAA's determination that the Arbitration Agreement violated its rules was an administrative determination that did not touch upon the enforceability of the agreement itself. *See* Def. Br. at 20. In several letters addressed to the parties, the AAA made clear that its review is "administrative", and it was not deciding whether the Arbitration Agreement "is legally enforceable" nor "is it a determination regarding the arbitrability of the dispute." Stio Decl., Exs. D, E, G; Francis Decl., Ex. 4. As such, Defendant's argument that the "AAA staff member's determination" affected the enforceability of the Arbitration Agreement is of no import. Def. Br. at 20.

Defendant relies on *Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577 (6th Cir. 2021) to support its argument that the decision not to arbitrate was improperly made by an AAA administrator rather than by an arbitrator. Def. Br. at 22-24. But because this case, unlike *Ciccio*, does not raise any fundamental issues as to arbitrability of an agreement, Defendant's reliance is misplaced. In *Ciccio*, an AAA administrator determined that the AAA's subject-specific healthcare rules applied to a consumer's claim and as a result of that determination, precluded arbitration unless the parties signed a post-dispute arbitration agreement. *Id.* at 579-80. Therefore, the issue in *Ciccio*, whether the agreement incorporated a subject-specific AAA rule, was an "initial gateway question" because it is "coextensive with 'whether the parties have agreed to arbitrate' the underlying dispute." *Id.* at 582, 583-84 (citations omitted) (noting that gateway arbitrability questions include whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy). This is in stark contrast to the procedural issues in the present case. The parties in this case agreed on the threshold issues of arbitrability. The claim was submitted for arbitration before the AAA without dispute or opposition from either party. Neither party disputed that the AAA's Consumer Rules and Protocol applied. Ultimately, the AAA terminated arbitration not because of any determination with respect to the arbitrability of the agreement itself, but because Defendant did not waive its damage limitation provision that the AAA found was in violation of its rules. *See* Francis Decl., Ex. 4.

### E.    Alternative Arbitration Provider

Next, Defendant contends that arbitration may still proceed, despite the AAA's declination to administer the dispute, with an alternative arbitrator. Def. Br. at 24-25. Defendant points to the Arbitration Agreement, which only requires that the arbitration be in accordance with the AAA's rules without designating the AAA as the arbitration forum. *Id.* As such, Defendant argues that since the AAA declined to arbitrate, the Court should compel Plaintiff to arbitrate her claims with a neutral arbitrator. *Id*. This argument, however, is not persuasive.

The issue before the Court is not whether Plaintiff may proceed to arbitrate in another forum under the AAA's rules, but whether she can be compelled to arbitrate at all. The Arbitration Agreement itself does not require arbitration in the event the AAA declines to arbitrate the claim

---

punitive damages voided her agreement as a matter of public policy. *Id.* at 225-26. In contrast, Plaintiff, here, voluntarily submitted her claim for arbitration. *See* Francis Decl., Ex. 1.

9

or dispute. In fact, Consumer Rule 1(d) allows either party to choose to proceed with litigation, a rule that has been incorporated into the parties' agreement. Compelling Plaintiff to this form of arbitration after the AAA declined to administer the arbitration would contravene the intent of the parties to be bound by the rules incorporated by their agreement. *See Greco v. Uber Techs., Inc.*, No. 4-20-02698, 2020 WL 5628966, at *4 (N.D. Cal. Sept. 30, 2020) ("Here, there is no need to appoint another arbitrator because the parties' original intent is clear: they meant to be governed by AAA rules, which allow the arbitrator to decline to arbitrate and the parties to then proceed with litigation.").[12]

### F. The AAA's Substantive Determination

Finally, Defendant challenges the AAA's substantive determination and further, argues that its damages limitation provision is valid and enforceable under both federal law and the AAA's rules. Def. Br. at 2, 20. Defendant takes specific issue with the AAA's allegedly incorrect application and interpretation of its own rules in its determination that the challenged provision of the Arbitration Agreement violated Principle 14 of the Protocol. Def. Br. at 20, 25 n.10, 28.

Here, Consumer Rule 53 makes clear that the AAA has the power to interpret and apply its own rules. Consumer Rules at 32. And under Consumer Rule 55, the AAA has sole discretion to decline to administer arbitration for "improper conduct". *Id.* As such, the "AAA is in a far better position to know its own rules and to exercise discretion according to those rules." *Greco*, 2020 WL 5628966, at *4.

In any event, the Court does not find any error in the AAA's application of its rules. In the AAA's published commentary on Principle 14 of the Protocol, it states that the purpose of the principle is "to make clear that arbitrators deriving their authority from Consumer contracts should enjoy the same authority courts have to fashion relief, including awarding attorney's fees and punitive damages." Francis Decl., Ex. 9 at 30. In light of this commentary, I find that the AAA's request that Defendant waive its damage limitation provision to be consistent with a reasonable interpretation of Principle 14 of the Protocol, and the decision did not violate the Defendant's contractual rights.[13]

## IV. CONCLUSION

For the reasons set forth above, I **DENY** Defendant's Motion to Compel Arbitration and Dismiss Plaintiff's Complaint.

---

[12] In any case, given the AAA's determination that the Arbitration Agreement itself is not in accordance with the AAA's rules, the Court is doubtful that arbitration could be conducted in accordance with the AAA's rules regardless of the arbitrator. Defendant cannot bypass the AAA's rules to which both parties have agreed to be bound. Any alternative arbitrator would have to effectively disregard (1) the AAA's determination that the agreement violated its rules and (2) Plaintiff's subsequent choice to pursue her claim in court pursuant to Consumer Rule 1(d).

[13] Because this matter shall proceed in court, the Court does not address Defendant's arguments, in the alternative, that the damage limitation provision at issue is severable and does not preclude arbitration. *See* Def. Br. at 30-33.

<u>/s/ Freda L. Wolfson</u><br>
Freda L. Wolfson<br>
U.S. Chief District Judge